**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | **CRIMINAL ACTION** |
| ) | **NO. 05-1620-CBS** |
| AMARO MILLAN and ) | |
| ORLANDO ALICEA, ) | |
| Defendants, ) | |

**MEMORANDUM OF PROBABLE CAUSE AND**
**ORDER ON THE GOVERNMENT'S MOTION FOR DETENTION**
**January 25, 2005**

**SWARTWOOD, M.J.**

I. Nature of the Offense and the Government's Motion

On January 14, 2005, a Criminal Complaint was filed charging Amaro Millan ("Mr. Millan"), with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §846; knowingly and intentionally conducting and attempting to conduct financial transactions (wire transfers) involving cash represented to be the proceeds of specified unlawful activity (drug trafficking) with the intent to promote the carrying on of the specified unlawful activity and with the intent to conceal and disguise the nature, location, source, ownership and control of the cash believed to be the proceeds of the specified unlawful activity, in violation of 18 U.S.C. §1956(a)(3).

This same Complaint charges Orlando Alicea ("Mr. Alicea"), with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §846.

At the Defendants' initial appearance on January 14, 2005, they were both advised of their right to a preliminary examination in accordance with Fed. R. Crim. P. 5.1 and the Government moved for a detention hearing in accordance with 18 U.S.C. §§3142(f)(1)(C) (Defendants are charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the "Control Substances Act") (21 U.S.C. § 801 *et seq.*)) and (f)(2)(A)(risk of flight).

On January 18, 2005, a consolidated probable cause/detention hearing was held with respect to both Defendants. At this hearing, Derek M. Dunn, Special Agent with the United States Immigration and Customs Enforcement Agency ("ICE"), testified on behalf of the Government and was cross-examined by Defendants' counsel. Additionally, Edwin Alicea, testified on behalf of his brother, Orlando, and was cross-examined by the Government on the issue of his suitability as a third-party custodian.

The detention portion of this hearing was continued until January 21, 2005 for further evidence and final arguments. At this hearing, Nydia Millan, Mr. Millan's former wife, testified and was cross-examined as a potential third-party custodian.

At the conclusion of Mr. Alicea's detention hearing, I informed the parties that I intended to release Mr. Alicia on specified conditions.  The Government then requested a stay of my Order releasing Mr. Alicea pending an appeal to the emergency District Court Judge, I allowed the Government's request.

## II. Facts

### A. Money Laundering Charge Against Mr. Millan

1.   On or about November 4, 2003, a cooperating witness ("CW") contacted Mr. Millan with a request that he wire money to Columbia for the CW.  Mr. Millan was licensed to conduct a wire transfer business.  During this initial meeting, Mr. Millan explained to the CW the various regulations that controlled the wire transfer of money and explained to the CW various methods for avoiding those regulations.  This and subsequent conversations between the CW and Mr. Millan were monitored and recorded.  Gov't Ex. 1.

2.   On March 3, 2004, the CW again met with Mr. Millan for the purpose of wiring money to Columbia.  At this meeting, Mr. Millan explained other undetectable ways to transfer money to Columbia and the CW discussed with Mr. Millan future wire transfers of substantial amounts of money.  Id.

3.   By the summer of 2004, Mr. Millan was wire transferring substantial amounts of money to Columbia for the CW.  In addition, during this period of time, Mr. Millan introduced the CW to another individual who could help transfer the substantial amounts of money

that the CW wanted to transfer to Columbia. Mr. Millan was instrumental in recruiting this other individual, who also wire transferred substantial amounts of money to Columbia. Id.

4. During these conversations in the summer of 2004, the CW made it clear to Mr. Milan that he was in the business of laundering money in connection with the sale of illegal drugs. During these conversations, Mr. Millan expressed an interest in purchasing large amounts of illegal drugs which he said that he could sell through an established network. During some of these discussions, Mr. Millan mentioned that he had a nephew that would assist him in the sale of illegal drugs. Id.

5. After a period of months, the CW and Mr. Millan discussed a possible purchase by Mr. Millan of a substantial amount of cocaine. Arrangements were eventually made for the purchase of 10 kilos of cocaine by Mr. Millan for $180,000.

6. On November 14, 2004 the CW, with the assistance of two undercover agents ("UCAs"), met with Mr. Millan and Mr. Alicea, who Mr. Millan introduced as his nephew, at Mr. Millan's office.

7. As a result of discussions at Mr. Millan's office, Mr. Millan showed the CW and the UCAs packages of money which he represented to be $180,000. By agreement, Mr. Millan and one of the UCAs remained with the money while the other UCA and the CW went with Mr. Alicea to a warehouse where the CW and the UCA stated that the cocaine was stored and where it would be delivered.

8. Upon arrival at the warehouse, Mr. Alicea and one of the UCAs met with a third UCA who showed Mr. Alicea packages of cocaine wrapped in plastic bags, which the UCA represented to be 10 kilos. Mr. Alicea then took some of the cocaine into an adjacent bathroom with a knife for the alleged purpose of testing the cocaine, emerged from the bathroom with the cocaine, stated that he was satisfied with the cocaine, and put the cocaine in a toolbox which he then put into another toolbox affixed to his vehicle. Gov't. Exs. 2, 3, and 4. At this time, Mr. Alicea called Mr. Millan to indicated that he was satisfied with the cocaine and that Mr. Millan should release the money. Upon this event, both Messrs. Millan and Alicea were arrested in their separate locations.

9. In addition to the criminal charges contained in this Complaint, there was evidence presented at the probable cause/detention hearing that Mr. Millan was involved in obtaining and selling fraudulent visas.

10. Following Mr. Millan's arrest in connection with this Complaint, a search warrant was executed at his premises. Law enforcement officers found and seized the following property: passport with a fraudulent visa, two (2) small rocks of cocaine and $10,000 in cash.

III.  <u>Probable Cause</u>

A.  <u>Mr. Millan</u>

Mr. Millan had multiple recorded conversations with the CW concerning the wire transfer of money to Columbia.  During these conversations, the CW told Mr. Millan that the money being transferred to Columbia was from the sale of illegal drugs.  At the beginning of these transactions between Mr. Millan and the CW, Mr. Millan had explained to the CW the existence of regulations for the wire transfer of money and had explained how to avoid detection in violating those regulations.  Additionally, Mr. Millan recruited a third person to assist the CW in the transfer of large amounts of money to Columbia, which he knew to be proceeds from the sale of illegal drugs.  Therefore, I find probable cause for the offense charged against Mr. Millan for money laundering, in violation of 18 U.S.C. §1956(a)(3).

Mr. Millan was recorded making arrangements with the CW for the purchase of a substantial amount of cocaine.  On the agreed date for completing a transaction for the purchase of 10 kilos of cocaine, Mr. Millan met with the CW and the UCA at his office and produced $180,000.  Thereafter, Mr. Millan was aware that Mr. Alicea was going with one of the UCAs and the CW to take delivery of the 10 kilos of cocaine.  Subsequently, the delivery of 10 kilos of cocaine was made to Mr. Alicea and Mr. Alicea called Mr. Millan to release the $180,000.  Mr. Millan then released the $180,000 to the UCA.  Therefore, I find probable cause for the

offense charged against Mr. Millan for conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §846.

### B. Mr. Alicea

As recited above, Mr. Alicea was involved with Mr. Millan in a conspiracy to purchase 10 kilos of cocaine for $180,000. Therefore, I find probable cause for the offense charged against Mr. Alicea for conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §846.

## IV. The Bail Reform Act

### A. Discussion of the Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a). Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e). The Supreme Court, in United States v. Salerno, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) has cautioned that "[i]n our society liberty is the

norm, and detention prior to trial or without trial is the carefully limited exception." Id. at 755, 107 S.Ct. at 2105. For this reason, the Defendant may be detained only if the judicial officer finds by (1) clear and convincing evidence, that the Defendant is a danger to the community, or (2) a preponderance of the evidence, that the Defendant poses a risk of flight. See 18 U.S.C. § 3142 (f); United States v. Jackson, 823 F.2d 4-5 (2d Cir. 1987); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986). See also United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991). Furthermore, the judicial officer "may not impose financial condition that results in the pretrial detention of the person". 18 U.S.C. § 3142 (c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted. See 18 U.S.C. § 3142 (f)(1). The Government may also move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or attempt to obstruct justice. 18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of

the Defendant and the safety of the community against any danger posed by the Defendant's pretrial release. See United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community, the Government is aided by the statutory presumptions created by 18 U.S.C. 3142(e). Where the offense charged is one of the offenses enumerated in Section 3142(f)(1), Section 3142(e) creates the rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the Defendant has been convicted of a federal offense that is described in Section 3142(f) or an offense under state law that would have been an offense described in Section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense. Section 3142(e) also creates the rebuttable presumption that no condition or combination of conditions will ensure the safety of the community and the appearance of the Defendant if the judicial officer finds that there is probable cause to believe that the Defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed (a) in the

Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c). In order to rebut either presumption, the Defendant must produce "some evidence" to the contrary. <u>United States v. Jessup</u>, 752 F.2d 378, 384 (1st Cir. 1985).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including:
>
>> 1. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> 2. whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
>
> (4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

V.   Discussion of Whether Detention is Warranted

A.   Mr. Alicea's History and Characteristics

Mr. Alicea was born in Boston, Massachusetts on June 9, 1970, where he continued to live until after graduating from high school and completing 1.5 years of classes at Roxbury Community College.

For the past two years, Mr. Alicea has resided in Taunton, Massachusetts in an apartment leased to his girlfriend's mother and where he has resided with his girlfriend, her mother and their daughter.  Prior to living with his girlfriend and her mother, Mr. Alicea lived with his mother in Boston, Massachusetts.

Mr. Alicea has had no contact with his father who lives in Puerto Rico, but has had constant contact with his mother, who lives in Boston, two sisters who both live in Boston and a brother, Edwin, who lives with his family in Hanover, Massachusetts.

Mr. Alicea and his present girlfriend are expecting their second child within the next three weeks.  Mr. Alicea has another child, age eleven, through a previous relationship.  That child presently resides with her mother in Roslindale, Massachusetts.

For the past four and one-half years, Mr. Alicea has been self-employed as a home improvement worker, whose principal customer is his brother, Edwin, who owns investment property in the South Shore area.

On January 15, 1993, Mr. Alicea was charged with trafficking in a controlled substance for which he received a sentence of five years and one day committed.

Mr. Alicea's brother, Edwin, is a retired Boston Police Officer, who is presently involved in a real estate investment business. Mr. Edwin Alicea resides at a large house in Hanover, Massachusetts, where there is adequate space for Mr. Alicea to live, if he is released, with his girlfriend, their child and expected new born child.

B.  Mr. Millan's History and Characteristics

Mr. Millan was born in Columbia, South America, on December 17, 1940, where he remained until sometime after he completed high school in 1958 in Columbia.

Mr. Millan is a naturalized citizen, who has dual citizenship in both the United States and Columbia.

Mr. Millan's parents are deceased. Mr. Millan has been married on three occasions. In 1961, Mr. Millan was married in Columbia and divorced in 1965. Two children were born of this marriage and those children, ages 44 and 43, presently reside together in Townsend, Massachusetts. In 1967, Mr. Millan married his second wife in Holbrook, Massachusetts and they were divorced in 1980. One child, presently age 34, was born of this marriage and presently resides in West Roxbury, Massachusetts. In 1990, Mr. Millan married his third wife in Brockton, Massachusetts. The couple were divorced in 2000. One child, age thirteen, was born from this marriage and presently resides with her mother in Brockton, Massachusetts. Mr. Millan has an eighteen year old son, who lives in Columbia with his mother. Mr. Millan also has a son,

age twenty, who is presently attending Boston College and was born as a result of a previous relationship with a woman he did not marry. Mr. Millan has a current girlfriend with whom he has a ten month old child.

Mr. Millan, his girlfriend and ten month old child have resided in Brockton for the past four years, but his girlfriend and their child moved from this residence in mid-December 2004.

Mr. Millan works for Multi-Services Store in Brockton, Massachusetts which sells pre-paid phone cards and cellular telephones. He has been employed by this company since 1997, is the store manager, but receives no compensation as an employee of this company.

Mr. Millan has no criminal record.

    C.  <u>Nature of the Offense and Weight of the Evidence</u>

I have previously found probable cause for the offenses charged against Mr. Millan in this Complaint and the drug offense charged against Mr. Alicea in this Complaint. Mr. Millan was recorded making arrangements with a CW for a number of different criminal enterprises, including the purchase of ten kilos of cocaine. Mr. Alicea was recorded, surveilled and photographed during his involvement in the purchase of ten kilos of cocaine. Therefore, I find that the evidence against both Defendants is substantial.

    D.  <u>Rebuttable Presumption</u>

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(C) and (f)(2)(A). The Government must prove that there is no condition or combination of conditions that would reasonably assure the safety of any other person or the community if Defendants were released, or the appearance of Defendants as required.

The rebuttable presumption created by 18 U.S.C. § 3142(e) applies in this case because Defendants are charged with a drug offense for which a maximum penalty of ten years or more is prescribed in the Controlled Substances Act. I have previously found that there exists probable cause for the charges against these Defendants. Therefore, I find that under 18 U.S.C. § 3142(e), there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of these Defendants or the safety of the community if they were released. I find that as to Mr. Alicea, the presumption has been rebutted and that there are conditions I can impose which will assure the safety of the community and his appearance in this Court. As to Mr. Millan, I find that he has not produced nor proffered any credible evidence on his behalf to rebut this presumption. Without such evidence, the presumption alone may justify detention. United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985); United States v. Vires, 637 F. Supp. 1343, 1351 (W.D.Ky. 1986). Although I have determined that Mr. Millan has failed to rebut the presumption, for the sake of completeness, I

14

will examine the Government's assertion that he poses a danger to the community and a risk of flight.

### E.  Government's Burden

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(C) and (f)(2)(A).  The Government must prove that there is no condition or combination of conditions that would reasonably assure the safety of any other person or the community if Defendants were released, or the appearance of these Defendants as required.

The Government's burden of proof is by:

1. *Clear and convincing evidence* that these Defendants, if released, would pose a serious danger to any person or the community, or

2. A *preponderance of the evidence* that these Defendants, if released, would not appear as required.

F.  <u>Whether Mr. Millan Poses A Danger To The Community</u>

Mr. Millan has no criminal record. However, during the course of this investigation, Mr. Millan was involved in money laundering, obtaining fraudulent visas and produced $180,000 to purchase ten kilos of cocaine. Mr. Millan also told the CW that he could sell illegal drugs through an established network. Furthermore, Mr. Millan introduced the CW to an individual who could wire transfer large amounts of money which Mr. Millan knew to be proceeds of drug transactions and when his premises were searched, a passport with a fraudulent visa, $10,000 cash and a small amount of crack cocaine were found. The Government has presented irrefutable evidence that Mr. Millan is engaged in multiple types of criminal activity. Under these circumstances, I find by clear and convincing evidence that he presents a danger to the community.

G.  <u>Whether Mr. Millan Poses A Risk Of Flight</u>

Mr. Millan was born in Columbia and maintains substantial ties to that country, including a child and business contacts. Although Mr. Millan is a naturalized United States citizen, he retains his Columbian citizenship. Additionally, Mr. Millan was able to obtain fraudulent visas and on fairly short notice, come up with $180,000 to purchase ten kilos of cocaine. Mr. Millan faces a mandatory/minimum of ten years in prison if convicted of conspiracy to possess with intent to distribute ten kilos of cocaine. Considering the totality of these circumstances, including Mr. Millan's contacts and ties to Columbia; Mr. Millan's ability to

obtain fraudulent visas; Mr. Millan's ability to obtain a large sum of money for the purchase of cocaine; and the substantial period of incarceration that Mr. Millan faces if convicted of these charges, I find by a preponderance of the evidence that Mr. Millan poses a risk of flight and that there are no conditions or combination of conditions that can be imposed to assure his appearance in this Court as directed.

    H.    <u>Whether Mr. Alicea Poses A Danger To The Community</u>

Mr. Alicea has a conviction in the early 1990s for trafficking with a controlled substances for which he received a five year and one day sentence. Mr. Alicea is now charged in this Court with the attempted purchase of ten kilos of cocaine for $180,000. Therefore, based on Mr. Alicea's past criminal record and the current cocaine charge, I find that Mr. Alicea poses a danger to the community. However, I further find that there are conditions or a combination of conditions that can be imposed to protect the public if Mr. Alicea were released in this case. Mr. Alicea's brother, Edwin, is a retired Boston Policeman and a respected businessman. Mr. Edwin Alicea has agreed to act as a third-party custodian, have his brother, his girlfriend and their children reside with him in a house large enough to accommodate them in Hanover, Massachusetts and to employ Mr. Alicea while on release in this Court. Mr. Edwin Alicea understands the obligations of being a third-party custodian and has expressed his willingness to report to Pretrial Services any breach of any of the conditions imposed

for Mr. Alicea's release.  Therefore, I find that this arrangement is sufficient to protect the public if Mr. Alicea is released.

## I. Whether Mr. Alicea Poses A Risk Of Flight

Mr. Alicea was born in the United States, has lived all of his life in Boston or Brockton, Massachusetts, has a mother, two sisters, a brother, a child with his present girlfriend, a child with a former girlfriend and is momentarily expecting a third child with his present girlfriend, all residing in Massachusetts.  Mr. Alicea has no known contacts with any other foreign country or other location within the United States.  Although Mr. Alicea faces a substantial period of incarceration if he is found guilty of the offense charged in this Complaint, I find that his ties to this community and his residing with his brother, Edwin, as a third-party custodian, are sufficient conditions to assure his appearance in this Court as directed.

## VI. Order of Detention Pending Trial

In accordance with the foregoing memorandum,

IT IS ORDERED:

1.   That Mr. Millan be committed to the custody of the Attorney General or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2.   That Mr. Millan be afforded a reasonable opportunity for private consultation with counsel; and

3. On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Mr. Millan is detained and confined shall deliver Mr. Millan to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

RIGHT OF APPEAL

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

/s/ Charles B. Swartwood,III
CHARLES B. SWARTWOOD, III
MAGISTRATE JUDGE