IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

```
_____
                              )
UNITED STATES OF AMERICA      )
                              )
           v.                 )    CRIMINAL NO. 05-10040-DPW
                              )
ORLANDO ALICEA                )
_____)
```

GOVERNMENT'S TRIAL BRIEF

The United States of America hereby submits this trial brief.

INTRODUCTION

The indictment charges in Count One that Orlando Alicea and Amaro Millan conspired to possess with intent to distribute and distribute 5 kilograms or more of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846.  The indictment charges in Count Two that Alicea possessed at least 5 kilograms of cocaine with intent to distribute it, in violation of Title 21, United States Code, Section 841(a)(1). The indictment also includes a forfeiture allegation.  The remaining counts charge co-defendant Amaro with money laundering.  Amaro died while the charges were still pending.  The government does not anticipate that the evidence supporting money laundering counts will be offered during the current trial, other than to explain the course and context of events should circumstance make such an explanation relevant.

The drug charges stem from a reverse sting.  During the

money laundering investigation, Amaro asked the cooperating witness ("CW") if he would be willing to sell cocaine to Amaro and his nephew.  After ignoring and/or resisting the inquiries, the CW agreed to introduce Amaro and his nephew - the defendant Orlando Alicea - to his connection.  Alicea met with the CW and the two undercover officers on December 16, 2004 and negotiated to purchase 10 kilograms of cocaine for $18,000 per kilogram.

Alicea, Amaro, the CW and the undercover officers met again on January 14, 2005 and finalized the arrangements for the transaction, which required Alicea and Amaro to show the money at one location after which Alicea was to drive to another location to obtain the cocaine.

On January 16, 2005, Alicea drove to a garage in Brockton and received from the undercover officers 10 kilograms of cocaine.  Alicea then called Amaro and instructed him to give over the money ($180,000).  Alicea was arrested immediately after he placed the cocaine in his truck.  The delivery of the cocaine was captured on videotape.  The meetings on December 16 and January 14 were recorded on audio tape.

The evidence at trial will consist primarily of the testimony of the undercover officers, the audio tapes of the recorded conversations (which were conducted mostly in Spanish), the video tapes of the delivery on January 16, the cocaine, and photographs of the money.  The government does not anticipate calling the CW as a witness.

## ELEMENTS OF THE OFFENSE

The elements of the offenses are set forth in the Government's Request for Jury Instructions, previously filed with the Court.

## EVIDENTIARY AND OTHER TRIAL ISSUES

Currently anticipated issues include the following:

1. <u>Audio Recordings</u>   The delivery was recorded on videotape that also recorded the sound, including the conversations among the defendant and the undercover officers.  The conversations are almost exclusively in Spanish.

The conversations during the meetings on December 16 and January 14 are recorded on compact disks.  The government plans to authenticate the recordings and offer them during the testimony of the undercover officers.  As the conversations are in Spanish, the government has prepared transcripts of pertinent portions of the conversations.

The government will request that a copy of the transcripts be provided to each juror as the tapes are played.  As the transcripts include the translation of a foreign language, special considerations arise. Under prevailing law in the First Circuit, English transcripts of foreign conversations should be marked and admitted in evidence in addition to the recordings themselves. <u>United States v. Morales-Madera</u>, 352 F.3d 1 (1st Cir. 2003); <u>United States v. Rengifo</u>, 789 F.2d 975 (1st Cir. 1986). The trial court retains discretion as to what documentary

evidence the jury is permitted to have during deliberations. United States v. McCarthy, 961 F.2d 972, 978 (1st Cir. 1992) ("Whether ... evidentiary exhibits properly admitted should or should not accompany the jury to the jury room is a discretionary matter for the trial court."); Rengifo, 789 F.2d at 983 (district court did not abuse discretion in submitting transcripts to jury during deliberations).

    2.   Drug Weight  Both counts allege that the offense involved more than 5 kilograms of cocaine. The 5 kilogram quantity triggers a mandatory minimum sentence of 20 years' imprisonment and an increase of the otherwise applicable statutory maximum from 20 years to life imprisonment. In light of Apprendi v. New Jersey, 530 U.S. 466 (2000); Harris v. United States, 122 S.Ct. 2406 (2002); United States v. Malouf; 466 F.3d 21, 25 (1st Cir. 2006); United States v. Lizardo, 445 F.3d 73, 90 (1st Cir. 2006); United States v. Goodine, 326 F.3d 26 (1st Cir. 2003); United States v. Derman, 298 F.3d 34, 42-42 (1st Cir. 2002), the Court, not the jury, shall determine (at sentencing and by a preponderance of the evidence standard) whether the offenses involved more than 5 kilograms of cocaine in order to trigger the mandatory minimum sentence required pursuant to 21 U.S.C. § 841(b)(1)(B). However, in order for the Court to impose a sentence above the default maximum of 20 years set forth in 21 U.S.C. § 841(b), the jury must determine beyond a reasonable doubt that the offense involved more than 5 kilograms. In this

case, it is theoretically possible that an appropriate sentence upon conviction of either offense would be for a term of years greater than the default statutory maximum of 20 years. Thus, the government requests that the Court instruct the jury on quantity and request from them a quantity determination as set forth in the government's requested jury instructions.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:

/s/ Theodore B. Heinrich
THEODORE B. HEINRICH
Assistant U.S. Attorney

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing.

/s/ Theodore B. Heinrich
THEODORE B. HEINRICH
Assistant U.S. Attorney

April 3, 2007